UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
PALM BEACH DIVISION

No. 9:18-cv-80605-Rosenberg/Reinhart

SHELLI BUHR,

      Plaintiff,

          v.

ADT INC. & ADT LLC,

      Defendants.

_____/

### ADT'S MOTION TO STAY THE CASE PENDING FCC RULING

Pursuant to the doctrine of primary jurisdiction and the Court's inherent power to control its docket, Defendants ADT Inc. and ADT LLC (together, "ADT") move the Court for an order staying this litigation pending rulings by the Federal Communications Commission[1] on an early May 2018 petition requesting that the FCC clarify the definition of "automatic telephone dialing system" under the Telephone Consumer Protection Act, 47 U.S.C. § 227, ("TCPA") as well as the Commission's own Public Notice issued *sua sponte* on May 14, 2018, that requested comments on that definition and whether predictive dialers, which dial from a list of specifically-identified telephone numbers, constitute "automatic telephone dialing systems," and in support state:

### INTRODUCTION

Plaintiff claims that ADT violated the TCPA by allegedly using an automatic telephone dialing system ("ATDS" or "autodialer") to place calls to her seeking to collect a debt she owed to ADT without her prior express consent and/or after she revoked consent to receive such calls.

---

[1]    The FCC is the federal agency charged with construing and enforcing the TCPA.

1

The TCPA and its implementing regulations established by the FCC define an ATDS to be "equipment which has the capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator . . . and to dial such numbers."  47 U.S.C. § 227(a)(1); 47 C.F.R. § 64.1200(f)(2).  The TCPA generally prohibits non-emergency autodialed calls to cell phone numbers unless the call is made with "the prior express consent of the called party."  47 U.S.C. § 227(b)(1)(A)(iii).  It is not a violation of the TCPA to place a non-autodialed, unsolicited call; it is not a TCPA violation to place hundreds of non-autodialed, unsolicited calls seriatim. Thus, the determination of whether a defendant's calling platform is or is not an ATDS is often dispositive in TCPA litigation, and that is the case here.

As both the FCC and the courts recently have noted, however, there is "a significant fog of uncertainty about how to determine if a device is an ATDS so as to bring into play the restrictions on unconsented calls."  *ACA Int'l v. FCC*, 885 F.3d 687, 703 (D.C. Cir. 2018); FCC Public Notice, *Consumer and Governmental Affairs Bureau Seeks Comment on Interpretation of the Telephone Consumer Protection Act in Light of the D.C. Circuit's ACA International Decision*, 2 (May 14, 2018) (hereinafter, the "Public Notice")[2] (questioning "how to interpret 'capacity' [in the ATDS definition] in light of the [*ACA International*] court's guidance").[3]

---

[2]     A copy of the Public Notice is attached hereto for the Court's convenience as <u>Exhibit 1</u> and is available at https://ecfsapi.fcc.gov/file/0514497027768/DA-18-493A1.pdf.  The Court may take judicial notice of the Public Notice, comments submitted in response, and petitions to the FCC requesting declaratory rulings.  *Gusman v. Comcast Corp.*, No. 13CV1049, 2014 WL 2115472, at *5 (S.D. Cal. May 21, 2014) ("The Court may take judicial notice of information made 'publicly available by government entities' and whose authenticity no party disputes, such as declaratory ruling petitions filed with the FCC, and subsequent filings by the FCC and other parties on the same docket.") (internal citations omitted).

[3]     Specifically, the FCC recently posed the following questions, among others, regarding how to determine whether a calling platform is an ATDS under the TCPA:

For example, how much user effort should be required to enable the device to function as an automatic telephone dialing system?  Does equipment have the capacity if it requires the simple flipping of a switch?  If the addition of software

Yet, the FCC is poised to eliminate much of that "fog of uncertainty" as it currently is considering a joint trade petition seeking two declaratory rulings that address this precise issue and also, on its own, issued a Public Notice requesting comments on how ATDS should be defined. Specifically, the petition requests that the FCC both (1) confirm that, in order to be an ATDS, equipment must use a random or sequential number generator to store or produce numbers and dial those numbers without human intervention, and (2) find that only calls made using actual ATDS capabilities are subject to the TCPA's restrictions.  *See Petition for Declaratory Ruling*, U.S. Chamber of Commerce and ACA International, *et al.*, CG Docket 02-278, at i, 20, 27 (FCC May 3, 2018) (hereinafter, "Joint Trade Petition").[4]  A favorable ruling on either request will render conclusive that the calls that ADT placed to Plaintiff were not made with a prohibited ATDS and, thus, do not constitute violations of the TCPA.  The Commission is considering a host of other issues relating to what is and is not an ATDS as well, including whether predictive dialers that call from a defined list of telephone numbers fall within the autodialer definition.[5]  *See* Public Notice, at 2-3 & n.19; Joint Trade Petition, at 22 n.40 & 24-25.

---

can give it the requisite functionality?  If it requires essentially a top-to-bottom reconstruction of the equipment?  In answering that question, what kinds (and how broad a swath) of telephone equipment might then be deemed to qualify as an automatic telephone dialing system?

Public Notice, at 2.

[4]      A copy of the Joint Trade Petition is attached hereto as Exhibit 2 and is available online at https://ecfsapi.fcc.gov/file/1051094891940/Petition%20for%20Declaratory%20Ruling.pdf.

[5]      Predictive dialers use an algorithm to "predict" when a call representative will become available to take a call, effectively queueing answering recipients for the caller.  "In most cases, [users of predictive dialers] program the numbers to be called into the [dialing] equipment, and the dialer calls them at a rate to ensure that when a consumer answers the phone, a [representative] is available to take the call.  The principal feature of predictive dialing software is a timing function, not number storage or generation.  These machines are not conceptually different from dialing machines without the predictive computer program attached."  *Marks v. Crunch San Diego, LLC*, 55 F. Supp. 3d 1288, 1293 n.7 (S.D. Cal. 2014).

Because the FCC has been designated by Congress as the agency responsible for interpreting the TCPA, and because the FCC is in the middle of doing just that, the Court should exercise its discretion to stay this litigation under the primary jurisdiction doctrine pending the FCC's resolution of the Joint Trade Petition.  Alternatively, the Court should stay this case pursuant to its inherent powers to control its docket.  If this case proceeds before the FCC issues its decision, the Court risks entering an order contrary to the FCC's ruling and which is wrong as a matter of law under the TCPA.

## BACKGROUND

### A.      Plaintiff's Allegations

In this putative nationwide class action, Plaintiff claims that ADT utilized an ATDS to place at least 175 debt collection calls to her cell phone since August 2017.  Compl. (ECF 1) ¶¶ 1, 17, 18, 34, 39.  She alleges that these calls either were placed without her prior express consent to receive such calls or after she revoked her consent, and, as such, ADT violated the TCPA.  *Id.* ¶¶ 14, 34, 39.  Among other relief, Plaintiff seeks statutory damages of $1,500 for each call that she and the putative class allegedly received from ADT.  *Id.*, Prayer for Relief, at (c).

### B.      ADT's Calling Platforms Do Not Have The Capacity to Store and Produce Numbers and Dial Those Numbers Without Human Involvement

ADT utilizes two different calling platforms when making debt collection calls to its customers and former customers: LiveVox's Human Call Initiator ("HCI") and Avaya Proactive Contact 5.1 ("APC 5.1").  June 22, 2018 Declaration of Brett Cameron ("Cameron Decl.," attached as Exhibit 3), ¶ 2.  Neither platform has the capacity to produce or store telephone numbers using a random or sequential number generator, nor can they dial those numbers without human involvement.  *Id.*, ¶ 7; *Pozo v. Stellar Recovery Collection Agency, Inc.*, No. 8:15-cv-929, 2016 WL 7851415, at *2 (M.D. Fla. Sept. 2, 2016) ("Each call initiated from HCI must be initiated by

a human . . . HCI does not . . . incorporate any random or sequential number generator"). In fact, neither HCI nor APC 5.1 has ever had this capability. Cameron Decl., ¶ 7; *see also Pozo*, 2016 WL 7851415, at *2.

The Northern District of Illinois recently described HCI's characteristics and operation as follows:

> [T]he Human Call Initiator is a human initiated and human controlled dialing system that requires a TSI agent to manually initiate every call. Each call initiated from a Human Call Initiator must be initiated by a human "clicker agent." The clicker agent is responsible for confirming that the number to be called is the correct number, and after doing so, launching the call by physically clicking the number. When any [defendant] representative uses the Human Call Initiator system, he or she must click on a dialogue box to confirm the launching of a call to a particular telephone number. The call cannot be launched unless the clicker agent clicks on the dialogue box.

*Arora v. Transworld Sys., Inc*., No. 1:15-cv-04941, 2017 WL 3620742, at *1 (N.D. Ill. Aug. 23, 2017).[6]

APC 5.1, in turn, is configured to operate in one of two different dialing modes – managed preview mode and predictive mode. Cameron Decl., ¶ 3. In managed preview mode, the account information and telephone number for a customer with a past due balance appear on an ADT call representative's computer screen. *Id*., ¶ 4. The call representative, then, makes a decision whether

---

[6] Every court that has considered whether HCI is an autodialer under the TCPA of which ADT is aware has held that it is not. *See Arora*, 2017 WL 3620742, at *2-3; *Schlusselberg v. Receivables Performance Mgmt., LLC*, No. 15-7572, 2017 WL 2812884, at *4 (D.N.J. June 29, 2017) ("Defendant's HCI system is not an autodialer for purposes of the TCPA"); *Smith v. Stellar Recovery, Inc*., No. 15-cv-11717, 2017 WL 955128, at *6 (E.D. Mich. Mar. 13, 2017) (concluding that HCI "is characterized by one key factor that separates it from autodialers: it requires human intervention – the clicker agent – to launch an outgoing call," and, because "the basic function of an autodialer is the capacity to dial phone numbers 'without human intervention,' and the HCI system lacks that capacity, the HCI is not an autodialer."); *Pozo*, 2016 WL 7851415, at *6 ("In sum, because Stellar's Human Call Initiator system required its representatives to manually dial all calls and was not capable of making any calls without human intervention, Stellar did not employ an autodialer. Because Stellar did not make autodialed calls, Stellar cannot be liable under the TCPA.").

to click on the telephone number to launch the call or not; no call is placed unless the telephone number is clicked by (*i.e.*, with the intervention of) ADT's call representative.[7]  Cameron Decl. ¶ 4.

In predictive mode, an ADT employee logs into the APC 5.1 system and uploads a list of specific ADT telephone numbers for customers with past due balances.  *Id*., ¶ 5.  Next, an ADT employee turns the system on, selects the numbers to be called, and the system dials those numbers – and only those numbers.  *Id*.  Calls are connected to live ADT call representatives when they are answered.  *Id*.  In other words, there is human involvement in logging into the APC 5.1 system; the creation, uploading, and selection of the specific telephone numbers to be called; the initiation of the dialing system; and during the telephone calls themselves.  The predictive mode of APC 5.1 is used by ADT to dial calls to cellular telephone numbers for which ADT has the customer's consent, as well as residential landline telephone numbers (as opposed to cell phones) because no consumer consent is necessary to place such calls under the TCPA.  *Id*., ¶ 6.  *See also Orsatti v. Quicken Loans, Inc.*, No. 2:15-cv-09380, 2016 WL 7650574, at *3 (C.D. Cal. Sept. 12, 2016) (confirming consent is required only for prerecorded message calls to a residential phone number, not autodialed calls).  The collection calls placed to Plaintiff were placed with both HCI and APC 5.1 at different times.  Cameron Decl., ¶ 8.

### C. The FCC is Actively Considering the ATDS Definition, the Meaning of "Capacity," and Whether Predictive Dialers are Autodialers

As noted above, the TCPA restricts calls to cell phones through the use of an ATDS without the prior express consent of the called party.  47 U.S.C. § 227(b)(1)(A)(iii).  Thus, assuming that

---

[7]    This type of calling often is referred to as "point and click dialing" and nearly universally has been held not to constitute autodialing under the TCPA.  *See, e.g.*, *Pozo*, 2016 WL 7851415, at *3-4 ("dialing systems which require agents to use an electronic 'point and click' function to initiate calls are not autodialers because human intervention is required to initiate the calls") (citing numerous cases).

a caller does not have the called party's consent, TCPA liability only lies if the caller utilized an autodialer.  That is the crux of Plaintiff's claim – that ADT placed collection calls to her by means of an autodialer.  Compl. ¶¶ 1, 17, 18, 34, 39.

According to the Public Notice, the FCC is currently considering the issues raised by the Joint Trade Petition (and other issues), which are directly on point:

> [W]e seek comment on what constitutes an "automatic telephone dialing system."
> . . . We seek comment on how to interpret "capacity" in light of the [*ACA International*] court's guidance. . . . We seek further comments on the functions a device must be able to perform to qualify as an [ATDS]. . . . How "automatic" must dialing be for equipment to qualify as an [ATDS]?  Does the word "automatic" "envision non-manual dialing of telephone numbers"?  Must such a system dial numbers without human involvement? . . . "[D]oes the bar against 'making any call using' an [ATDS] apply only to calls made using the equipment's [ATDS] functionality? . . . If a caller does not use equipment as an [ATDS], does the statutory prohibition apply?

Public Notice, at 1-3; *compare with* Joint Trade Petition, at i, 20, 27.  *See also supra* n.3.  The FCC also is considering whether a predictive dialer that dials from a list of specific telephone numbers falls within the autodialer definition.  *See* Public Notice, at 2-3 & n.19; *see also* Joint Trade Petition, at 22 n.40 & 24-25 ("The FCC should make clear that if human intervention is required in generating the list of numbers to call or in making the call, then the equipment in use is not an ATDS. . . .").

The Commission may determine that the mere ability of a random or sequential number generator to store and produce numbers, and dial those numbers is not enough for equipment to constitute an ATDS.  Rather, the FCC may well conclude that those numbers must be able to be dialed without any human involvement as the Joint Trade Petition requests.  In addition, the FCC might find that, if a calling platform allows for the caller to utilize either preview dialing or predictive dialing through "the simple flipping of a switch," Public Notice, at 2, only those calls actually placed in predictive mode (and without human involvement) may be considered to have

been dialed with an ATDS.  The Commission also may issue a decisive ruling that predictive dialers, which call numbers from a specific list are not autodialers.[8]  These determinations likely will be dispositive on the issues raised by Plaintiff's Complaint here.

## ARGUMENT

Under these circumstances, the Court has two independent grounds for staying this case pending the Commission's decision.  The Primary Jurisdiction Doctrine counsels restraint in these circumstances.  Moreover, the Court's inherent authority to manage its docket warrants the stay.

---

[8]       In *ACA International*, the D.C. Circuit explained the murkiness caused by the FCC's various rulings on whether a predictive dialer that calls from a list, as opposed to the dialer itself creating and dialing a random or sequential set of numbers constitutes an ATDS:

> [T]he Commission suggested it saw a difference between calling from a list of numbers, on one hand, and "creating and dialing" a random or arbitrary list of numbers, on the other hand.  Or as the Commission has elsewhere said, numbers that are "randomly or sequentially generated" differ from numbers that "come from a calling list." . . . So which is it: does a device qualify as an ATDS only if it can generate random or sequential numbers to be dialed, or can it so qualify even if it lacks that capacity?  The [FCC's 2015 omnibus TCPA] ruling, while speaking to the question in several ways, gives no clear answer (and in fact seems to give both answers).  It might be permissible for the Commission to adopt either interpretation.  But the Commission cannot, consistent with reasoned decisionmaking, espouse both competing interpretations in the same order.

885 F.3d 702-03 (internal citations omitted).

Since *ACA International*, courts are split on whether the FCC's previous predictive dialer rulings were, in effect, vacated by the D.C. Circuit.  For example, in *Herrick v. GoDaddy.com,* the District of Arizona stated that "[a]s a result of the D.C. Circuit's holding on the issue [that the FCC has failed to clarify whether dialing from a list meets the 'ability to generate random or sequential numbers to be dialed' element in the ATDS definition], this Court will not defer to any of the FCC's 'pertinent pronouncements' [regarding whether a predictive dialer constitutes an ATDS." -- F. Supp. 3d --, No. CV-16-00254, 2018 WL 2229131, at *7 (D. Ariz. May 14, 2018); *see also Marshall v. CBE Group, Inc.*, No. 2:16-cv-02406, 2018 WL 1567852, at *4 (D. Nev. Mar. 30, 2018).  However, in *Reyes v. BCA Fin. Services, Inc.,* Judge Goodman found that *ACA International* did not vacate those orders, but recognized that the FCC's position is not clear and that either interpretation of ATDS by the FCC may be permissible.  No. 16-24077-CIV–GOODMAN, 2018 WL 2220417, at *9 (S.D. Fla. May 14, 2018).  The *Reyes* Court went on to note, however, that *ACA International* gave it "considerable pause" with respect to whether predictive dialers are automatic telephone dialing systems under the TCPA.  *Id*., at *11.  It is very likely that the FCC will bring clarity to the predictive dialer issue.

I.      **The Court Should Stay This Litigation Under the Primary Jurisdiction Doctrine**

"A district court acts within its own general discretion to control its own docket when determining whether a stay is warranted." *Comprehensive Health Care Sys. of Palm Beaches, Inc. v. M3 USA Corp.*, No. 16-cv-80967, 2017 WL 4868185, at *1 (S.D. Fla. 2017) (Bloom, J.) (staying putative TCPA class action pending FCC determination of petition for declaratory ruling), *citing Am. Mfrs. Mut. Ins. Co. v. Edward D. Stone, Jr. & Assoc.*, 743 F.2d 1519, 1525 (11th Cir. 1984). A stay in such instances serves to "'promote judicial economy, reduce confusion and prejudice, and prevent possible inconsistent resolutions.'" *Id.* (citation omitted).

To that end, courts have developed the primary jurisdiction doctrine, which permits a court to stay proceedings (or dismiss a complaint without prejudice) pending agency guidance when a claim presents an "issue within the special competence of an administrative agency." *Reiter v. Cooper*, 507 U.S. 258, 268-69 (1993); *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956); *Beach TV Cable Co., Inc. v. Comcast of Fla./Ga., LLC*, 808 F.3d 1284, 1288 (11th Cir. 2015). "The main justifications for the rule of primary jurisdiction are the expertise of the agency deferred to and the need for a uniform interpretation of a statute or regulation." *Boyes v. Shell Oil Prods. Co.* 199 F.3d 1260, 1265 (11th Cir. 2000); *Scoma Chiropractic, P.A. v. Dental Equities, LLC*, No. 2:16-cv-41-FtM-99MRM, 2018 WL 2455301, at *3 (M.D. Fla. June 1, 2018).  Application of the doctrine is appropriate where conduct is alleged which is "'at least arguably protected or prohibited by a regulatory statute,'" and agency resolution "'is likely to be a material aid to any judicial resolution.'" *Mendoza v. Unitedhealth Grp. Inc.*, No. C 13–1553, 2014 WL 722031, at *1 (N.D. Cal. Jan. 6, 2014) (staying putative TCPA class action pending FCC resolution of various petitions regarding the ATDS definition) (citation omitted).  Indeed, the doctrine "promotes proper relationships between the courts and administrative agencies charged with particular regulatory

duties." *Mercury Motor Express, Inc. v. Brinkle*, 475 F.2d 1086, 1092 (5th Cir. 1973).  At bottom, the primary jurisdiction doctrine "seeks to produce better informed and uniform legal rulings by allowing courts to take advantage of an agency's specialized knowledge, expertise, and central position within a regulatory regime." *Pharm. Research & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 673 (2003); *Passero v. Diversified Consultants, Inc.*, 13–CV–338, 2014 WL 2257185, at *1 (W.D.N.Y. May 28, 2014) (staying TCPA action pending FCC ruling on whether defendant's calling platform falls within the definition of an ATDS).

Although "[n]o fixed formula exists for applying the doctrine of primary jurisdiction," the Supreme Court has provided a framework for determining when the doctrine applies.  *W. Pac. R.R.*, 352 U.S. at 64.  First, the court must determine whether a statute grants an administrative agency authority over the issues that are potentially subject to primary jurisdiction.  *Id.*  Second, the court must decide "whether the purposes [that the doctrine] serv[e] will be aided by its application in particular litigation."  *Id*.  Within that second step, courts generally consider two factors: (a) whether referral to an agency will promote national uniformity in application of the law, and (b) whether the question at issue involves technical considerations within the agency's field of expertise.  *Far E. Conference v. United States*, 342 U.S. 570, 574 (1952).  This Court has articulated the *Western Pacific Railroad* standard as a four-factor test: "'(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration.'" *M3 USA*, 2017 WL 4868185, at *2 (citation omitted).

Under this framework, staying an action on primary jurisdiction grounds is appropriate while an agency considers petitions for declaratory relief.  *GTE.Net LLC v. Cox Commc'ns, Inc.*,

185 F. Supp. 2d 1141, 1144 (S.D. Cal. 2002) (granting motion to stay on primary jurisdiction grounds).   Indeed, the number of courts staying or dismissing TCPA actions pending FCC resolution of petitions for declaratory rulings is legion.  *See*, *e.g.*, *M3 USA*, 2017 WL 4868185, at *2-3; *Degnen v. Dental Fix RX, LLC*, No. 4:15-CV-1372, 2016 WL 4158888, at *3 (E.D. Mo. Aug. 5, 2016); *Wright v. Lyft, Inc.*, No. 14-421, 2015 WL 12977403, at *2-3 (W.D. Wash. Jan. 6, 2015); *Stewart v. T-Mobile USA, Inc.*, No. 4:14-cv-02086, 2014 WL 12614418, at *3-6 (D.S.C. Oct. 8, 2014);  *Pickens v. Am. Credit Acceptance, LLC*, No. 2:14-00201, 2014 WL 4662512, at *2-3 (S.D. Ala. Sept. 19, 2014); *Wahl v. Stellar Recovery, Inc*., No. 14-CV-6002, 2014 WL 4678043, at *2-3 (W.D.N.Y. Sept. 18, 2014); *Lambert v. Buth-Na-Bodhaige, Inc*., No. 2:14-cv-514, 2014 WL 4187250, at *2-3 (E.D. Cal. Aug. 21, 2014) (England, C.J.); *Lee v. loanDepot.com*, No. 14-1084, 2014 WL 4145504, at *1-2 (D. Kan. Aug. 20, 2014);  *Passero*, 2014 WL 2257185, at *2-3; *Gusman v. Comcast Corp*., No. 13-cv-1049, 2014 WL 2115472, at *1-5 (S.D. Cal. May 21, 2014); *In re Portfolio Recovery Assocs. TCPA Litig*., No. 11md2295, 2014 WL 12603110, at *2-3 (S.D. Cal. May 20, 2014); *Higginbotham v. Diversified Consultants, Inc*., No. 2:13-cv-02624, 2014 WL 1930885, at *1-4 (D. Kan. May 14, 2014); *Barrera v. Comcast Holdings Corp*., No. 14-cv-00343, 2014 WL 1942829, at *2-4 (N.D. Cal. May 12, 2014); *Matlock v. United Healthcare Servs., Inc*., No. 2:13-cv-02206, 2014 WL 1155541, at *1-2 (E.D. Cal. Mar. 20, 2014); *Hurrle v. Real Time Resolutions, Inc*., No. C13–5765, 2014 WL 670639, at *1-2 (W.D. Wash. Feb. 20, 2014); *Mendoza*, 2014 WL 722031, at *2; *Fried v. Sensia Salon, Inc*., No. 4:13-cv-00312, 2013 WL 6195483, at *4-6 (S.D. Tex. Nov. 27, 2013);  *St. Louis Heart Ctr. v. Gilead Palo Alto, Inc*., No. 4:13–CV–958, 2013 WL 5436651, at *1-2 (E.D. Mo. Sept. 27, 2013); *St. Louis Heart Ctr. v. Forest Pharms., Inc.*, No. 4:12CV2224, 2013 WL 3988671, at *1 (E.D. Mo. July 17, 2013); *Glauser v. Twilio, Inc*., No. C 11-2584, 2012 WL 259426, at *1-3 (N.D. Cal. Jan. 27, 2012);

*Greene v. T-Mobile USA, Inc.*, No. C07-1563, 2008 WL 351017 (W.D. Wash. Feb. 7, 2008).[9]

The Court should exercise its broad discretion to stay this litigation pending the FCC's resolution of the Joint Trade Petition. As described more fully below, a stay will promote all of the aforementioned interests, is supported by proper application of the primary jurisdiction doctrine, and would constitute a sound exercise of the Court's inherent discretion to control its docket. *See Leyva v. Certified Grocers of Cal. Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979).

### 1. This Litigation Involves a Potentially Dispositive Issue of Law Pending Before and Properly Resolved by the FCC

The first primary jurisdiction doctrine consideration – the need to resolve an issue, *M3 USA*, 2017 WL 4868185, at *2 – easily supports a stay here. In resolving class certification and summary judgment, the Court will need to address Plaintiff's core legal theory that ADT's debt collection calls were placed by an ATDS. For, if an ATDS was not used, there is no liability under the TCPA. This is a question that arises from the TCPA, and currently is pending before and properly resolved by the FCC. If the Commission finds that, in order to be an ATDS, equipment must use a random or sequential number generator to store or produce numbers and dial those numbers without human intervention; that only calls made using actual ATDS capabilities are subject to the TCPA's autodialer restrictions; or that predictive dialers are not autodialers, that

---

[9]     *See also, e.g., Scoma Chiropractic*, 2018 WL 2455301, at *3-4; *Barron's Outfitters Inc. v. Big Hairy Dog Info. Sys. & Retail Pro Int'l, LLC*, No. 14-04335 (D.S.C. June 19, 2015) (ECF 30); *Jones v. Am. Credit Acceptance Corp.*, No. 14- 04130 (D.S.C. Feb. 25, 2015) (ECF 18); *Beck Simmons LLC v. Francotyp-Postalia, Inc.*, No. 14-1161 (E.D. Mo. Feb. 17, 2015) (ECF 31); *Physicians Healthsource, Inc. v. Endo, Inc.*, 14-02289 (E.D. Pa. Jan. 5, 2015) (ECF 27); *Physicians Healthsource, Inc. v. Anda, Inc.*, No. 12-60798 (S.D. Fla. May 23, 2014) (Rosenbaum, J.) (ECF 105); *Physicians Healthsource, Inc. v. Masimo Corp.*, No. 14-00001 (C.D. Cal. May 22, 2014) (ECF 47); *Kaye v. Merck & Co.*, No. 3:10-01546 (D. Conn. May 15, 2014) (ECF 126); *Whiteamire Clinic, P.A. v. Quill Corp.*, No. 1:12-05490 (N.D. Ill. Apr. 9, 2014) (ECF 170); *Physicians Healthsource, Inc. v. Purdue Pharma, L.P.*, No. 12-001208 (D. Conn. Feb. 3, 2014) (ECF 101); *Burik v. Staples Contract and Commercial, Inc.*, No. 1:12-cv-10806 (D. Mass. Aug. 9, 2013) (ECF 90); *Raitport v. Harbour Cap. Corp.*, 09-156 (D.N.H. Sept. 12, 2013) (ECF 85).

determination will be binding on this Court.  *See, e.g.*, *Keim v. ADF Midatlantic, LLC*, 199 F. Supp. 3d 1362, 1368 n.4 (S.D. Fla. 2016) (Marra, J.) ("The Court must accept interpretations of the TCPA in FCC orders.  As the Eleventh Circuit [has] explained . . . the Communications Act of 1934 and the Hobbs Act work together to divest district courts of jurisdiction to question interpretations of the TCPA in FCC orders.") (citing *Mais v. Gulf Coast Collection Bureau, Inc*., 768 F.3d 1110, 1119–21 (11th Cir. 2014)).  Moreover, such a ruling will resolve this litigation because ADT would be entitled to summary judgment and no class could be certified for violations of the TCPA.

Given that the FCC is considering a core issue that not only needs to be decided in this litigation, but likely is dispositive of Plaintiff's claims, the first primary jurisdiction doctrine factor weighs heavily in favor of a stay.  *See, e.g.*, *M3 USA*, 2017 WL 4868185, at *2 (first primary jurisdiction factor met because "the Court will inevitably benefit from the FCC's guidance" on the central – and possibly dispositive – issue" in the litigation); *Barrera*, 2014 WL 1942829, at *2 (granting stay and holding that first primary jurisdiction factor was satisfied because pending FCC petitions "address whether there is liability under the TCPA for the same conduct for which Plaintiff seeks to hold Defendant liable").  "[A]llowing the FCC to resolve the foregoing issues prior to adjudicating the issues in the present action, in order to obtain the benefit of the FCC's guidance, is appropriate."  *Glauser*, 2012 WL 259426, at *3 (staying putative TCPA class action because "the benefit to be provided by FCC guidance on potentially dispositive issues in this litigation outweighs the benefit to plaintiff in allowing the action to proceed").  Because the FCC is set to decide a fundamental issue in this case – whether ADT's calling platform might constitute an ATDS – the Court should stay the litigation until the agency does so.

### 2.    The FCC Has Jurisdiction to Administer and Interpret the TCPA

The second primary jurisdiction doctrine criterion – whether the issue has been placed within the jurisdiction of the agency having authority to address it, *M3 USA*, 2017 WL 4868185, at *2 – also weighs heavily in favor of a stay.  It is beyond dispute that the FCC has jurisdiction to decide whether certain technology constitutes an ATDS, and the agency is poised to decide that very issue soon.

"The TCPA vests the FCC with the authority to 'prescribe regulations to implement the requirements of [the statute].'  This includes issuing rules clarifying and interpreting the TCPA, as well as addressing petitions like" the Joint Trade Petition and the ATDS issues raised *sua sponte* by the FCC in its Public Notice.  *Id.* (citations omitted).  "'The implementation and interpretation of the TCPA have been placed squarely within the jurisdiction of the FCC.'"  *Freeman v. Specialty Retailer Inc.*, No. 14-2691, 2015 WL 12804530, at *2 (S.D. Tex. Jan. 20, 2015) (staying TCPA litigation pending FCC ruling on petition) (quoting *Pickens*, 2014 WL 4662512, at *2); *but cf. Bohlke v. Shearer's Foods, LLC*, No. 9:14-CV-80727, 2015 WL 249418, at *3 (S.D. Fla. Jan. 20, 2015) (Rosenberg, J.) (denying motion to stay seeking deference to FDA in putative false advertising class action alleging that defendant falsely represented its food product as "all natural" because, among other reasons, "the FDA simply does not regulate those ['all natural'] claims").  As the *M3 USA* court explained in finding that the second primary jurisdiction factor was satisfied in that case: "[t]he FCC has already responded to the Petition by opening a notice-and-comment rulemaking proceeding and receiving public comment.  This, coupled with the directive from Congress regarding the scope of the FCC's jurisdiction, is sufficient to meet the second factor."  2017 WL 4868185, at *2.  So too here.  The FCC already has issued its Public Notice "seek[ing] comment" from the public on, among other things, the ATDS issues implicated in this case.  *See*

14

*generally* Public Notice.  As of June 13, 2018 when initial comments were due, *see* Public Notice, at 1, the FCC received 40 comments by various stakeholders, including by ADT[10] and members of the TCPA plaintiffs' bar, in response to its Public Notice.  *See* June 22, 2018, Declaration of Daniel S. Blynn (attached as <u>Exhibit 5</u>) at 4.

Accordingly, the second primary jurisdiction factor supports the issuance of a stay here, especially because the FCC's ruling "will clearly aid the resolution of this lawsuit."  *Freeman*, 2015 WL 12804530, at *2.  Indeed, "it is more efficient to simply wait for the FCC to do what it has already been asked [and agreed] to do," than for this Court to proceed further with this litigation before the FCC's forthcoming ruling.  *Gensel v. Performant Techs., Inc.*, No. 13-C-1196, 2015 WL 402840, at *3 (E.D. Wis. Jan. 28, 2015) (granting motion to stay TCPA action involving Avaya calling platform pending FCC ruling on several petitions; "[t]he Court will be in a better position to proceed to judgment with definitive guidance from the FCC").  This is a practical and sensible outcome, which will conserve judicial and party resources, and promote clarity and uniformity.  *Freeman*, 2015 WL 12804530, at *2 ("To avoid piecemeal and potentially inconsistent interpretations [of the TCPA], this Court has the discretion to promote clarity and uniformity by allowing the FCC to address the issue in the first instance.").

### 3.    The TCPA Provides a Comprehensive Scheme for the Use of Autodialers

The third primary jurisdiction doctrine factor – the existence of a comprehensive regulatory scheme, *M3 USA*, 2017 WL 4868185, at *2 – further supports a stay.  "'The TCPA . . . [is a] comprehensive regulatory scheme[] governing the use of automated telephone . . . equipment.'"

---

[10]    *See* Comments of ADT LLC d/b/a ADT Security Services, *In re Consumer and Governmental Affairs Bureau Seeks Comment on Interpretation of the Tel. Consumer Protection Act in Light of the D.C. Circuit's ACA Int'l Decision*, CG Docket 18-152 (FCC June 13, 2018) (*available at* https://ecfsapi.fcc.gov/file/106132503710192/ADTTCPACommentsonACA.pdf). A copy of ADT's FCC comments is attached hereto as <u>Exhibit 4</u>.

*Id*. (citation omitted).  The core issue that will require resolution in this case – whether ADT used an autodialer to place the collection calls of which Plaintiff complains – falls squarely within the TCPA's complex and complicated regulatory scheme.  Given that the FCC is in the middle of resolving this question by addressing the issues raised in the Joint Trade Petition and Public Notice, the third primary jurisdiction factor weighs in favor of staying the case pending this case until the FCC issues its rulings.  *See Freeman*, 2015 WL 12804530, at *3 ("The currently-pending petitions before the FCC, and the advanced stage of the FCC's consideration of those petitions, weigh heavily in favor of staying this lawsuit . . .").

**4.     The FCC is the Agency Charged With Authoritative Interpretations of the TCPA, Including Whether Calling Platforms Fall Within the Definition of ATDS**

The fourth and final primary jurisdiction doctrine factor – whether the ATDS definition issue requires expertise or uniformity in administration, *M3 USA*, 2017 WL 4868185, at *2 – supports a stay as well.

The TCPA's definition of ATDS, and the meaning of "capacity" within that definition, is a determination that has led to conflicting decisions and varied interpretations amongst the courts. *See Wright*, 2015 WL 12977403, at *3 (granting stay pending FCC determination of petitions concerning ATDS definition because, among other reasons, "courts have taken varied approaches to interpreting 'ATDS' creating a conflicting body of law").  As such, the determination of whether a calling platform's functionality does or does not fall within the TCPA's definition of ATDS involves technical and policy considerations that are within the FCC's discretion.  *Fried*, 2013 WL 6195483, at *4 ("The FCC has particular expertise in this field of telecommunications [*i.e.*, the definition of ATDS], enabling the agency to make a decision based on technical and technological

knowledge not necessarily available to this Court. . . . [T]he FCC is in prime position to determine whether the use of this technology violates the TCPA.").

The TCPA is a statute within the FCC's particular field of expertise, and Congress vested the Commission with considerable authority to implement it.  *See Charvat v. Echostar Satellite LLC*, 630 F.3d 459, 466-67 (6th Cir. 2010) (holding that district court should have invoked the doctrine of primary jurisdiction to allow FCC to address issues involved in litigation; "Congress vested the FCC with considerable authority to implement the [TCPA]. . . . In addition to these law-making and law-enforcing powers, the FCC has interpretive authority over the TCPA and its implementing regulations") (citation omitted); *Wright*, 2015 WL 12977403, at *3 ("Congress has vested in the FCC considerable authority to make rules and regulations to implement the TCPA.").

The cornerstone issues in this dispute, such as the definition of ATDS and the meaning of the term 'capacity,' are complex, technical, and policy-driven questions within the FCC's discretion.  *Charvat*, 630 F.3d at 467 ("Only the FCC can disambiguate the word[s]" in the TCPA and "all we can do is make an educated guess"); *United States v. Dish Network, LLC*, No. 09-3073, 2011 WL 475067, at *2 (C.D. Ill. Feb. 4, 2011) (granting stay pending FCC determination regarding the vicarious liability standard under the TCPA; "the FCC has comparatively greater expertise than courts for addressing the meaning and bounds the statute's language").  The FCC has technical, TCPA-related expertise that is perfectly suited for evaluating complicated and ever-changing dialing technology, and such technologies' uses in everyday operations for non-telemarketing purposes, such as the collection calls that underlie Plaintiff's Complaint.  *Charvat*, 630 F.3d at 467; *Dish Network*, 2011 WL 475067, at *2.  Further, the FCC is accustomed to considering these technological issues.  *Charvat*, 630 F.3d at 467 ("The agency, no surprise, is familiar with the regulations ***it*** prescribed, and possesses expertise over the statute it

implements[.]") (emphasis in original); *Pickens*, 2014 WL 4662512, at *2 (FCC "has expertise in the telecommunications area due to the fact that the TCPA . . . ha[s] been entrusted to its care for interpretation and implementation"). "It is virtually without dispute that the FCC has comparative expertise with regard to the TCPA." *Stewart*, 2014 WL 12614418, at *4.

Nearly twenty organizations collectively submitted the Joint Trade Petition to the FCC, requesting that the agency address the ATDS definition and the meaning of the term "capacity" following the D.C. Circuit's recent *ACA International* decision. The FCC, too, *sua sponte* issued a Public Notice requesting comments on those and other TCPA-related issues following *ACA International*. And, as discussed above, the FCC currently is using its agency expertise and is actively considering these ATDS issues, among others. Indeed, the FCC has sought public comment on the ATDS definition issues and requested rulings raised by the Joint Trade Petition. *See* Exh. A. In such situations where the FCC's pending ruling applies to the exact issue presented in the litigation, the primary jurisdiction doctrine is especially applicable. *See Hart v. Comcast of Alameda*, No. 07-6350, 2008 WL 2610787, at *2 (N.D. Cal. June 25, 2008) (staying TCPA case where the FCC was considering petitions on "the precise issue raised by plaintiff" and, thus, "is already using its recognized expertise to consider some of the exact questions placed before the court here, in an effort to promote uniformity in . . . regulation"). Because the FCC currently is considering what constitutes an ATDS and the meaning of "capacity" under the TCPA, the Court should stay this action on primary jurisdiction grounds.

## II.    The Court Should Stay This Litigation In the Exercise of Its Own Discretion

While, as detailed above, a stay is well-warranted under the primary jurisdiction doctrine, the Court also has independent authority to stay this case pursuant to its inherent powers to control its docket. *Freedom Scientific, Inc. v. Enhanced Vision Sys., Inc.*, No. 8:11-CIV-1194-T-17-AEP,

2012 WL 9064727, at *1 (M.D. Fla. Jan. 31, 2012) ("This Court is imbued with the inherent power

to control its docket and stay proceedings as it believes warranted").   As the Supreme Court has

explained, "the power to stay proceedings is incidental to the power inherent in every court to

control the disposition of the causes on its docket with economy of time and effort for itself, for

counsel, and for litigants."  *Landis v. N. Am. Corp.*, 299 U.S. 248, 254 (1936).

A stay would promote judicial economy, conserve both the Court's and parties' resources,

and promote uniformity of decision.   Indeed, absent a stay, the Court risks issuing a decision that

conflicts with, and is preempted by, the FCC's forthcoming ruling on the ATDS issues raised by

the Joint Trade Petition and the FCC's Public Notice seeking comment.  *See Keim*, 199 F. Supp.

3d at 1368 n.4; *Murphy v. DCI Biologicals Orlando, LLC*, No. 6:12-cv-1459-Orl–36KRS, 2013

WL 6865772, at *8 (M.D. Fla. Dec. 31, 2013) ("this Court finds the FCC's 1992 Order is binding

here and, under the Hobbs Act, is not subject to review except by the federal courts of appeals");

*see also* 28 U.S.C. § 2342(1) (federal Courts of Appeals have the "exclusive jurisdiction to enjoin,

set aside, suspend (in whole or in part), or to determine the validity of all final orders of the FCC"

made reviewable by 47 U.S.C. § 402(a)).   At bottom, "[t]he Court will be in a better position to

proceed to judgment with definitive guidance from the FCC."  *Gensel*, 2015 WL 402840, at *3.

A stay pending the FCC's rulings also would be in line with other courts that have stayed

TCPA litigations based on their inherent powers to control their dockets.  *See*, *e.g.*, *Miller v.

Directv, LLC*, No. 14-07579, 2015 WL 12656912, at *3 (C.D. Cal. Jan. 8, 2015) ("In the interests

of conserving the parties' and the Court's resources and preventing inconsistent rulings and

requests for reconsideration that may ensue, the Court instead *sua sponte* exercises its prudential

authority to stay the action pending the FCC's resolution of the . . . Petitions"); *Fontes v. Time

Warner Cable Inc.*, No. 14-cv-02060, 2014 WL 2153919, at *2 (C.D. Cal. May 19, 2014) ("A stay

is appropriate because it increases the likelihood that the Court will be able to address the parties' arguments after the FCC has acted on the Petitions.").  Where the FCC is actively considering a potentially dispositive issue, the Court is well within its sound discretion to stay this action.  And the Court should do so.  A stay will conserve judicial and party resources, prevent inconsistent rulings, and promote fairness in decisions on an ATDS issue on which the Commission is poised to issue an authoritative interpretation.

## CONCLUSION

The motion should be granted.

## LOCAL RULE 7.1 CERTIFICATION

I hereby certify that we conferred with opposing counsel in a good-faith effort to resolve the issue presented by this motion without need of court action, but that we were unable to do so.

Dated:  June 22, 2018

Respectfully submitted,

**McNEW P.A.**

s/ C. Sanders McNew
_____
C. Sanders McNew
mcnew@mcnew.net
Florida Bar No. 0090561
2385 NW Executive Center Drive, Suite 100
Boca Raton, Florida  33431
Tel:  (561) 299-0257
Fax: (561) 299-3705

 *-and-*

**VENABLE LLP**

Daniel S. Blynn (*pro hac vice* pending)
dsblynn@venable.com
Mary M. Gardner (*pro hac vice* pending)
mmgardner@venable.com
600 Massachusetts Avenue, NW
Washington, DC 20001
Tel: (202) 344-4000

*Attorneys for the Defendants,*
  *ADT Inc. & ADT LLC*

20

## <u>CERTIFICATE OF SERVICE</u>

  I hereby certify that on this 22d day of June, 2018, I have electronically filed a copy of the foregoing Motion to Stay and memorandum in support with the Clerk of the Court using the CM/ECF system, which automatically sends an electronic notification to all counsel of record and other CM/ECF participants duly registered to receive service of filings in this case.

        <u>*/s/ C. Sanders McNew*</u>
        C. Sanders McNew