**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No. 9:18-cv-80605-RLR**

Shelli Buhr, on behalf of herself and others similarly situated,

        Plaintiff,

v.

ADT LLC,

        Defendant.

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiff Shelli Buhr ("Plaintiff"), individually and on behalf of others similarly situated, alleges the following against ADT LLC ("ADT" or "Defendant"):

**SUMMARY OF THE ACTION**

1. Since August 2017, Plaintiff has received over 200 unwanted calls from ADT. ADT used an automatic telephone dialing system ("ATDS") to repeatedly call Plaintiff's cellular phone—sometimes twice per day—despite the fact that Plaintiff requested that ADT stop calling her cellular phone.

2. ADT used the Avaya Proactive Contact 5.1 dialer ("Avaya 5.1") to call Plaintiff and Class members. Avaya 5.1 is an ATDS. Avaya 5.1 is able to store or generate numbers and then dial them without human intervention and ADT used these functions to call Plaintiff and Class members. Avaya 5.1 also delivers pre-recorded messages by automatically calling a list of numbers and playing an audio file. ADT used Avaya 5.1 to make calls to Plaintiffs and Class members using pre-recorded voices.

1

3. Plaintiff brings this class action for damages and other equitable and legal remedies resulting from the unlawful conduct of Defendant in placing non-emergency calls to the cellular telephones of Plaintiff and Class members in violation of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq.* ("TCPA").

## PARTIES

4. Defendant ADT LLC is a Delaware corporation with its headquarters and principal place of business in Boca Raton, Florida.

5. Plaintiff Shelli Buhr is a citizen of California who resides in Victorville, California.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction under 28 U.S.C. § 1331 based on Plaintiff's claims under the TCPA, 47 U.S.C. § 227, *et seq.*

7. In addition, this Court has jurisdiction over this lawsuit under the Class Action Fairness Act, 28 U.S.C. § 1332, because this is a proposed class action in which: (1) there are at least 100 class members; (2) the combined claims of class members exceed $5,000,000 exclusive of attorney fees, pre-judgment interest, and costs, because each putative class member is entitled to $500.00 per call negligently placed in violation of the TCPA, or $1,500.00 per call knowingly or willfully placed in violation of the TCPA; and (3) Plaintiff and Defendant reside in different states.

8. This Court has personal jurisdiction over Defendant because its principal place of business is within this District and it has sufficient minimum contacts in Florida to render the exercise of jurisdiction by this Court proper and necessary.

9. Venue is likewise proper in this District under 28 U.S.C. § 1391(b) because Defendant's principal place of business is within this District.

**FACTUAL ALLEGATIONS**

**A.  Overview of the Problems with Automatic Telephone Dialing Systems.**

10.     Unwanted telephone calls, including robocalls and texts, are consistently one of the top consumer complaints filed with the FCC each year. Included in the FCC's definition of "robocalls" are "all autodialed or prerecorded calls or text messages to wireless numbers."[1] According to CBS News, more than 29 billion robocalls bombarded Americans in 2016 alone.[2] Moreover, complaints about automated telemarketing calls have continued to steeply climb. In a recent report, the Federal Trade Commission explained that, in fiscal year 2017, it received over 375,000 complaints per month about automated robocalls, up from only 63,000 per month in 2009.[3] Thus, in the past year, the FTC received 4.5 million robocall complaints, plus an additional 2.5 million complaints about live telemarketing calls.[4]

11.     The TCPA is consumers' main line of defense against these unwanted and invasive calls. In 1991, the United States Congress enacted the TCPA to address certain calling practices that can invade consumer privacy, threaten public safety, and impose costs on wireless consumers for each call they receive. The TCPA makes it unlawful for "any person within the United States . . . to make any call [to a cellular phone,]" other than a call for emergency purposes or made with the prior express consent of the called party, "using an automatic telephone dialing system or an artificial or prerecorded voice."

12.     "Autodialed" calls are made using at ATDS or "autodialer," which is an electronic device or software that automatically dials telephone numbers. When an autodialer connects an answered call to a live agent, it is often called a "predictive dialer." Predictive dialers use dialing

---

[1] *See* https://fcc.gov/consumers/guides/stop-unwanted-calls-and-texts.
[2] *See* https://cbsnews.com/news/fcc-chairman-ajit-pai-stopping-robocalls-exceptionally-complicated/.
[3] *See* https://theverge.com/platform/amp/2018/1/1/16837814/robocall-spam-phone-call-increase-2017-ftc-report.
[4] *Id.*

algorithms to predict when an agent will be available to take calls. Companies such as ADT use predictive dialers, such as Avaya 5.1, to increase the number of calls they can make to consumers at any given time. When companies use an ATDS to make calls to consumers from whom they have not obtained consent—or who have withdrawn their consent—the TCPA creates a private right of action for consumers to seek damages of $500.00 per violation (or $1500.00 per violation if the defendant made the call "willfully or knowingly").

**B. ADT Placed Non-Emergency Calls on Plaintiff's Cellular Phone after She Expressly Revoked Her Consent.**

13. On August 3, 2017, Plaintiff received a call from ADT on her cellular telephone regarding a debt she allegedly owed to ADT. Plaintiff answered the call and informed ADT that she did not want to receive calls from ADT on her cellular phone. By making this statement, Plaintiff revoked any consent for ADT to call her on her cellular phone. Despite her express revocation of consent, the ADT agent informed Plaintiff that she would continue to receive calls from ADT's automated system. The agent explained, "I can't stop the calls from the billing department" and added, "the system does it automatically."

14. On August 15, 2017, Plaintiff received another call from ADT on her cellular phone. She did not answer the call. Plaintiff also received a text message from ADT on her cellular phone on August 15. The text message came from messagefromadt@adt.com and requested that Plaintiff call ADT account services at "8002592478." Plaintiff replied to the text message by informing ADT that it had texted her cellular phone and that she did not want to receive communications from ADT on her cellular phone.

15. On August 16, 2017, Plaintiff received another call from ADT on her cellular phone. Plaintiff answered and again asked the ADT representative not to call her cellular phone.

The ADT representative replied that ADT would continue to call her despite her express revocation of any consent to call her.

16. Despite repeatedly revoking her consent to receive calls from ADT on her cellular phone, ADT went on to make hundreds of calls to Plaintiff's cellular phone for the purpose of collecting a debt. Plaintiff never provided any consent for ADT to contact her subsequent to her request to stop further calls.

17. ADT's calls to Plaintiff had no emergency purpose. Rather, ADT advised Plaintiff that its calls were for the purpose of collecting an alleged debt.

**C. ADT Made Calls to Plaintiff's Cellular Phone Number after it Acknowledged that Plaintiff Revoked Her Consent.**

18. ADT representatives routinely ask customers to confirm the telephone numbers ADT is authorized to call. ADT maintains an up-to-date database of consumer consent. ADT's records confirm that Plaintiff expressly revoked her consent to receive calls from ADT on her cellular phone on August 3, 2017.

19. According to ADT's records, ADT made over 100 calls to Plaintiff's cellular phone using Avaya 5.1 after she revoked her consent to receive calls from ADT on her cellular phone.

20. Each and every call and text message ADT made to Plaintiff's cellular phone after August 3, 2017, was knowing and willful.

**D. Avaya 5.1 Is an Automatic Telephone Dialing System.**

21. Avaya 5.1 is a predictive dialer that can automatically dial stored numbers and deliver predictively dialed calls or agent-less calls transmitting pre-recorded messages.

22. Avaya 5.1 has the capacity to store numbers in a list and dial them without human intervention. Avaya 5.1 also has the capacity to generate numbers from a list and dial those numbers without human intervention.

**E. ADT Made Calls to Plaintiff's Cellular Phone Using an Artificial or Prerecorded Voice.**

23.     Avaya 5.1 has the capacity to deliver pre-recorded messages without the need of live agents.

24.     ADT made numerous calls to Plaintiff using an artificial or prerecorded voice. Such calls are not permitted under the TCPA regardless of whether they are made by an ATDS.

**F. Plaintiff's Expert, Jeffrey Hansen, Will Opine that Avaya 5.1 is an ATDS and that ADT's Use of Avaya 5.1 Violated the TCPA.**

25.     Plaintiff has retained Jeffrey Hansen as an expert witness in this case. Mr. Hansen is the principal of Hansen Legal Technologies, Inc., a firm in the business of handing information technology, including investigations and analysis of electronic data. Mr. Hansen is widely recognized as one of the foremost authorities on TCPA liability in the United States, having served as an expert or consultant in more than 150 TCPA class action lawsuits and as an expert or consultant in numerous other civil cases.

26.     Recently, Mr. Hansen submitted an expert report in support of a plaintiff in a TCPA lawsuit, *Murray v. First National Bank of Omaha*, No. 1:15-cv-59, 2016 WL 3485154 (S.D. Iowa 2016). As in this case, the defendant made calls to the plaintiff using Avaya 5.1 After reviewing documents and evidence concerning Avaya 5.1, including Avaya manuals, and FCC orders and rulings, and based on his knowledge of computer storage and computer processing and his knowledge of autodialers and predictive dialers, Mr. Hansen concluded that Avaya 5.1 "has the characteristics of an 'automatic telephone ATDS' as defined by the TCPA" and the FCC.

27.     In this case, Mr. Hansen will opine that Avaya 5.1 is an ATDS and that ADT violated the TCPA when it used Avaya 5.1 to place calls to the cellular phone numbers of Plaintiff and Class members.

### G. ADT's Violations of the TCPA Harmed Plaintiff.

28. Plaintiff carries her cellular phone with her at most times so she can be available to family (including her children), friends, and her employer.

29. ADT's repeated calls invaded Plaintiff's privacy and intruded upon her right to seclusion. The calls frustrated and upset Plaintiff by constantly interrupting her daily life and wasted her time by requiring Plaintiff to retrieve and administer messages left by Defendant's calls.

30. ADT's calls intruded upon and occupied the capacity of Plaintiff's cellular phone and depleted the battery of Plaintiff's cellular phone. The clutter of ADT calls also impaired the usefulness of the call log feature of Plaintiff's cellular phone.

31. Plaintiff's attempts to block or reject ADT's calls still resulted in ringing and other alerts to Plaintiff's cellular phone.

## CLASS ACTION ALLEGATIONS

32. Plaintiff brings this lawsuit under Federal Rules of Civil Procedure Rules 23(a), (b)(2), and (b)(3) as a representative of the following class:

> All persons within the United States who, within the four years prior to the filing of this action, (i) received any non-emergency telephone call and/or text message from Defendant or its agents and/or employees; (ii) to said person's cellular telephone; (iii) through the use of an automatic telephone dialing system and/or with an artificial or prerecorded voice.

33. Excluded from the Class are those persons who (i) expressly consented to receive Defendant's non-emergency calls on their cellular phones and did not revoke such consent prior to receiving Defendant's calls, and/or (ii) directly provided their cellular telephone numbers to Defendant as to a particular account and did not revoke consent to receive calls on those numbers prior to receiving Defendant's calls. Also excluded from the Class are Defendant, its employees,

agents and assigns, and any members of the judiciary to whom this case is assigned, their respective court staff, and the parties' counsel in this litigation. This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of the Class; it does not seek recovery for personal injury and claims related thereto. Members of the above-defined Class can be identified through Defendant's records.

34. **Numerosity**. The exact size of the class is information within the exclusive knowledge of Defendant, but Plaintiff believes there are at least thousands of Class members. This allegation is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. This allegation is based on the following information: (1) ADT services 8 million customers; (2) the purpose of automated dialers is to call numerous persons in a short amount of time; and (3) many consumers have lodged complaints online about unwanted calls received from ADT. *See, e.g.*, https://800notes.com/Phone.aspx/1-800-522-2455/3 (last visited May 1, 2018).

35. The alleged size and geographic dispersal of the Class makes joinder of all Class members impracticable.

36. **Commonality and Predominance**. Common questions of law and fact exist with regard to each of the claims and predominate over questions affecting only individual Class members. Questions common to the Class include:

(a)     Whether Defendant's dialing system(s) constitute an ATDS under the TCPA and/or the FCC's rules;

(b)     Whether, within the four years prior to the filing of this Complaint, Defendant used an ATDS to place non-emergency calls on the cellular telephones of Plaintiff and Class members without their prior express consent;

(c) Whether, within the four years prior to the filing of this Complaint, Defendant used an ATDS to place non-emergency calls on the cellular phones of Plaintiff and Class members after they expressly revoked their prior express consent;

(d) Whether, within the four years prior to the filing of this Complaint, Defendant used an artificial or prerecorded voice in connection with its placement of non-emergency calls on the cellular telephones of Plaintiff and Class members without their prior express consent;

(e) Whether, within the four years prior to the filing of this Complaint, Defendant used an artificial or prerecorded voice in connection with its placement of non-emergency calls on the cellular telephones of Plaintiff and Class members after they expressly revoked their prior express consent;

(f) Whether Defendant's telephone calls were made knowingly or willfully;

(g) Whether Plaintiff and Class members were damaged by receiving such calls, and the extent of those damages; and

(h) Whether Defendant should be enjoined from engaging in such conduct in the future.

37. **Typicality**. Plaintiff's claims are typical of the claims of the Class, in that Plaintiff, like all Class members, has been injured by Defendant's uniform misconduct—the placement of non-emergency calls on cellular telephones using an automatic telephone dialing system or an artificial or prerecorded voice, which calls were made either (a) without the recipient's prior express consent or (b) after the recipient expressly revoked his or her prior express consent.

38. **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of the Class and is committed to the vigorous prosecution of this action. Plaintiff has

9

retained counsel experienced in complex consumer class action litigation and matters involving TCPA violations.

39. **Superiority**. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the amount of each individual Class member's claim is small relative to the complexity of the litigation, and because of Defendant's financial resources, class members are unlikely to pursue legal redress individually for the violations detailed in this complaint. Class-wide damages are essential to induce Defendant to comply with federal law. Individualized litigation would significantly increase the delay and expense to all parties and to the Court and would create the potential for inconsistent and contradictory rulings. By contrast, a class action presents fewer management difficulties, allows claims to be heard which would otherwise go unheard because of the expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

40. Class certification is also appropriate under Rule 23(b)(2) because Defendant has acted and refused to act on grounds that apply generally to the Class such that final injunctive and/or declaratory relief is warranted with respect to the Class as a whole.

### FIRST CLAIM FOR RELIEF
### Negligent Violation of the Telephone Consumer Protection Act
### 47 U.S.C. §§ 227, *et seq.*

41. Plaintiff reincorporates and restates paragraphs 1-40 herein, and further alleges as follows:

42. Without prior express consent or after any prior express consent was expressly revoked, Defendant placed non-emergency calls on the cellular telephones of Plaintiff and Class members using an automatic telephone-dialing system.

43. The foregoing acts and omissions constitute negligent violations of the TCPA, including, but not limited to, violations of 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(1)(iii).

44. Under 47 U.S.C. § 227(b)(3)(B), and as a result of the alleged negligent violations of the TCPA, Plaintiff and Class members are entitled to an award of $500.00 in statutory damages for each and every call placed in violation of the TCPA.

45. Plaintiff and Class members are also entitled to and seek injunctive relief prohibiting future violations of the TCPA.

## SECOND CLAIM FOR RELIEF
### Knowing or Willful Violation of the Telephone Consumer Protection Act
### 47 U.S.C. §§ 227, *et seq.*

46. Plaintiff reincorporates and restates paragraphs 1-40 herein, and further alleges as follows:

47. Without prior express consent, or after any prior express consent was expressly revoked, Defendant knowingly or willfully placed non-emergency calls on the cellular telephones of Plaintiff and Class members using an automatic telephone-dialing system.

48. The foregoing acts and omissions constitute knowing and/or willful violations of the TCPA, including, but not limited to, violations of 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(1)(iii).

49. Pursuant to 47 U.S.C. § 227(b)(3)(C), and as a result of the alleged knowing and/or willful violations of the TCPA, Plaintiff and Class Members are entitled to an award of $1,500.00 in statutory damages for each and every non-emergency call placed in violation of the statute.

50. Plaintiff and Class Members are also entitled to and seek injunctive relief prohibiting future violations of the TCPA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class defined above, respectfully requests that this Court:

(a) Determine that the claims alleged herein may be maintained as a class action under Federal Rule of Civil Procedure 23, and issue an order certifying the class defined above and appointing Plaintiff as the Class representative;

(b) Award $500 in statutory damages for each and every call that Defendant negligently placed in violation of 47 U.S.C. § 227(b)(1) of the TCPA;

(c) Award $1,500 in statutory damages for each and every call that Defendant willfully or knowingly placed in violation of 47 U.S.C. § 227(b)(1) of the TCPA;

(d) Grant appropriate injunctive and declaratory relief, including, without limitation, an order requiring Defendant to implement measures to stop future violations of the TCPA; and

(e) Grant such further relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues so triable.

Dated: June 28, 2018

Respectfully submitted,

By: s/ Adam Moskowitz
Adam M. Moskowitz, Esq.
adam@moskowitz-law.com
Howard M. Bushman, Esq.
howard@moskowitz-law.com
Adam A. Schwartzbaum, Esq.
adams@moskowitz-law.com
**THE MOSKOWITZ LAW FIRM, PLLC**
2 Alhambra Plaza
Suite 601
Coral Gables, FL 33134
Telephone: (305) 740-1423

*Counsel for Plaintiff and the Proposed Class*

By: s/ *Simon S. Grille*
Daniel C. Girard (*pro hac vice*)
dcg@girardgibbs.com
Angelica Ornelas (*pro hac vice*)
amo@girardgibbs.com
Simon S. Grille (*pro hac vice*)
sg@girardgibbs.com
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, CA 94108
Telephone: (415) 981-4800

*Counsel for Plaintiff and the Proposed Class*